**Wayne Edward FRAZIER and Colleen D. Frazier, his wife, Plaintiffs,**

v.

**MATERIALS TRANSPORTATION COMPANY; Applied Power, Inc.; Namco Controls, an Acme-Cleveland Company, Defendants.**

Civ. A. No. 84–1082.

United States District Court, W.D. Pennsylvania.

June 5, 1985.

Samuel R. Sciullo, Pittsburgh, Pa., for plaintiffs.

Wayman Irvin & NcAuley, Pittsburgh, Pa., for Applied Power Inc.

Rose, Schmidt, Dixon & Hasley, Pittsburgh, Pa., for Namco Controls.

James E. Kennedy, Pittsburgh, Pa., for Materials Transp.

## MEMORANDUM OPINION

GERALD J. WEBER, District Judge.

In this action for personal injury, plaintiffs have sued the maker of a hydraulic meat dumping machine and the makers of some of its component parts. Wayne Frazier injured his knee after jumping from the hydraulic lift of the meat dumping machine. He was standing on the lift in an attempt to clean the machine. After raising himself by activating the lift, he found he could not reach the stop button. Fearing the prospects of being dumped into

meat-grinding augurs, he jumped from a height of about six feet.

Each of the defendants has moved for summary judgment, supported by briefs, to which plaintiffs have responded. In their responses and pretrial narratives, plaintiffs have narrowed their cause of action to a single theory: failure to warn under Section 402A of the Restatement (Second) of Torts (1966). Plaintiffs do not dispute defendants' recital of facts, which makes this case ripe for summary judgment. We will address Namco's motion first.

Namco did not design or assemble the meat dumper; it manufactured four switches which were incorporated into the machine. These switches are located at various positions along a vertical channel in the machine. The vat which carries the meat to be dumped rides along this channel. The switches are intended only to indicate the position of the vat in the channel. They are not part of any of the operator's controls. Namco played no role in the ultimate placement of their switches. See Namco's Motion for Summary Judgment, Affidavit of Robert Kantner. The switches functioned properly at an inspection conducted June 20, 1984.

■ There is no question that a manufacturer may be liable for failure to warn even when a product is carefully designed and manufactured. *See, e.g. Sherk v. Daisy-Heddon*, 498 Pa. 594, 450 A.2d 615 (1982). But in order to succeed in such an action, plaintiffs must establish that the failure to warn was cause-in-fact and proximate cause of their injuries. *See, e.g. Conti v. Ford Motor Co.*, 743 F.2d 195, 196 (3d Cir.1984). "Although the question of causation is normally for the jury 'if the relevant facts are not in dispute and the remoteness of the causal connection between the defendants' negligence and the plaintiff's injury clearly appears, the question becomes one of law.'" (citations omitted). *Id.* at 197–98. In addition, in this case involving suppliers of component parts Section 402A implicitly requires proof that these defendants are responsible for the failure to warn. *Taylor v. Paul O. Abbe,*

*Inc.* 516 F.2d 145, 147 (3d Cir.1975) (judgment against component part supplier reversed).

■ Namco has set forth affirmative evidence in the form of an affidavit that it had no role in the placement of its switches on the meat dumper. See Kantner Affidavit, supra. Plaintiffs have not adequately rebutted this evidence; they simply argue the legal conclusion that Namco "should have foreseen that a human being could conceivably ride this machine," and that "Namco as a supplier had a duty to inquire of the manufacturer ... as to the placement and purpose of its switches on the machine." We reject these contentions. Suppliers of component parts, no matter how small or insignificant, should not be held to inquire into their ultimate use and foresee all possible applications in order to satisfy a duty to warn of potential danger associated with the finished product.

■ The evidence fails to show that Namco is close enough on the chain of causation to be held liable. Namco supplied four small switches to the builder of a complex electric and hydraulically powered machine. The switches simply activated a circuit to show the position of the dumping vat. Furthermore, plaintiff Wayne Frazier has stated that he jumped off the dumper before any switch was engaged. Deposition at 85–86. In light of these facts and the Court of Appeals' decision in *Taylor, supra,* we see no basis for subjecting Namco to trial on the issue of failure to warn. We learn from *Conti, supra,* the impropriety of allowing a jury to speculate on these causation-related issues, such as the degree of control over the final product exercised by a parts supplier. Namco's role in composing or attaching warnings is far too distant.

■ Defendant Applied Power occupies a similar position. It supplied two hydraulic pumps and four valves in the hydraulic system. Upon Applied Power's motion for summary judgment, plaintiffs set forth no evidence to establish that this defendant had any influence over the design or con-

struction of this machine or the placement of warnings. For the same reasons that apply to Namco we find that Applied Power has no actionable responsibility for the alleged duty to warn.

■ On the other hand, Materials Transportation Company ("MTC") assembled the dumper and exercised control over the finished product. MTC thus was responsible for the ultimate design and construction of the dumper. Plaintiffs here clear the obstacle which prevents them from reaching the other defendants: MTC has knowledge of the final product to the extent that it is reasonable to charge the company with forseeability. As to the merits of MTC's motion we cannot agree that there is no genuine issue of material fact. MTC argued that *Conti, supra,* and *Sherk, supra,* support its assertions, even while admitting that the instant case is factually different. MTC Brief in Support of Motion for Summary Judgment at 7. But these factual differences are decisive. A warning would have made no difference in *Conti* because it was determined that the automobile driver's inattention was a determinative cause of plaintiff's injuries. Similarly, in *Sherk,* additional warnings about the dangerous properties of air rifles were deemed immaterial when such danger is obvious. Plaintiff Wayne Frazier has alleged that he was instructed to ride the meat dumper in the normal course of his duties, Plaintiffs' Response to MTC Motion for Summary Judgment ¶ 16, and that he observed others riding the dumper, Plaintiffs' Pretrial Narrative at 3. In light of these claims we think plaintiffs are entitled to show whether warnings on the dumper might have made a difference. *Conti,* 743 F.2d at 199.