752 P.2d 1045

Leisa M. COTHRUN, Leslie Rene Crawford, Dawn Fisher, Richard Hounshell, S. Arlene Hutchinson, next of kin to James Hutchinson, John S. Insalaco, Ferrell McClellan, William Pearson, Plaintiffs/Appellants,

v.

Larry M. SCHWARTZ and Lillian Schwartz, husband and wife, Defendants/Appellees.

No. 2 CA–CV 87–0210.

Court of Appeals of Arizona, Division 2, Department A.

March 29, 1988.

Harrison & Lerch, P.C. by Mark I. Harrison, Douglas L. Christian, and Mary E. Berkheiser, Phoenix, Henderson & Goldberg by Thomas W. Henderson and Robert Jennings, Pittsburgh, for plaintiffs/appellants.

Gallagher & Kennedy by W. Charles Thomson and Thomas A. Maraz, Phoenix, for defendants/appellees Schwartz.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a summary judgment. This case involves the

alleged asbestos contamination of a trailer park in Globe, Arizona, and rises from the same lawsuit which we previously had on appeal in *Burns, et al. v. Jaquays Mining Corporation, et al.*, 156 Ariz. 375, 752 P.2d 28 (App.1987).

The facts considered in the light most favorable to appellants are as follows. The appellees lived in Michigan. Until 1958, Larry Schwartz, now deceased, was a dental technician. In 1958 he incorporated two businesses. One, Great Lakes Filter Media Company, Inc. was in the business of manufacturing filters for all sorts of liquids. No asbestos was used in the manufacture of these filters. He also incorporated the Great Lakes Asbestos Corporation. This corporation was authorized to deal and trade in all kinds of goods, supplies and merchandise. He dissolved this corporation in 1979. The Schwartzes became acquainted with Jack and Geraldine Neal, who had an asbestos mill in Globe adjacent to the property which eventually became the trailer park, Mountain View Mobile Home Estates. This mill is alleged to be the source of contamination of the trailer park.

Schwartz bought asbestos ore from the national stock pile and sent it to the Neals, who milled it for him. Schwartz then sold the asbestos to his customers.

In the early 1970's the Schwartzes loaned the Neals $16,000 to purchase United States Forest Service property near Flagstaff which the Neals could then exchange for forest service property adjacent to their mill. This property became the trailer park.

In 1977, in lieu of the repayment of the $16,000, the Neals deeded the Schwartzes nine lots in the trailer park. In 1979 the Schwartzes obtained two more parcels of land in the park from the Neals. This was four years after the mill closed.

The Schwartzes sold their lots between 1977 and 1979. Of the plaintiffs who are appellants herein, only James E. Hutchinson and his wife, Arlene, purchased their lot, in 1977, from the Schwartzes. The Hutchinsons claim they first discovered or knew about the asbestos contamination in 1979. The Schwartzes also contend that they did not know about the asbestos contamination until December 17, 1979.

The appellants' complaint alleges claims for relief for personal injuries and property damage based on negligence, gross negligence, nuisance and strict liability, all as a result of the asbestos contamination which originated from the Neals' mill. They contend the Schwartzes should be liable to them because (1) they sold them the land and (2) they were in business with the Neals. The appellants also contend the Schwartzes should be liable on the basis of strict liability. Appellants further contend that the court erred in granting summary judgment before they could complete their discovery. We affirm.

The liability of a vendor of land for conditions existing at the time of conveyance of the land is found in Restatement (Second) of Torts § 352 (1965):

"Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

Section 353 of the Restatement states the following as to undisclosed dangerous conditions known to the vendor:

"1. A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or

should realize the risk involved, and has reason to believe the vendee will not discover the condition or realize the risk."

We previously followed the Restatement of the Law in *Dorman v. Swift & Company,* ___ Ariz. ___, 757 P.2d 1064 (1988).

■ The evidence is undisputed that the lots were already contaminated when the sale was made to the appellants. There is no evidence that the appellees knew of the contamination prior to the sale. Appellants argue that appellees should have known of the contamination because they were in the business of manufacturing asbestos products. The uncontradicted evidence is that they were not manufacturers of such products. Schwartz sold the asbestos fiber to customers upon order. Schwartz was in Globe once, but there is no evidence that he ever saw the mill or the trailer park site. We are unprepared to make the quantum leap which appellants want us to make here. We cannot say that because Schwartz sold the fibers he was an expert in asbestos and aware of its dangers; that he should have known that the fibers from the mill were likely to be blown onto the adjacent land; and that such fibers would be blown on the adjacent land in such a quantity as to cause a health hazard to persons who purchased the lots.

■ The appellants next contend that the Schwartzes should be liable because they were in the business of manufacturing and milling the asbestos with the Neals. There is no such evidence in this case. Nor was there any evidence, as contended by the appellants, that the Schwartzes were in business with Neal in regard to the development of the trailer park. There is no evidence that the Schwartzes were in partnership with the Neals, or that they had any type of business relationship, other than the Neals doing custom milling for them. As far as the milling was concerned, there was no evidence that the Neals and the Schwartzes were in a joint venture, in other words, that they had 1) a contract, 2) a common purpose, 3) a community interest, and 4) an equal right of control over the milling process which allegedly created the danger at the trailer park. See *West v. Soto,* 85 Ariz. 255, 336 P.2d 153 (1959).[1]

Appellant's last theory of liability is that of strict liability under Restatement (Second) of Torts § 402A (1965) which states:

**"Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

As for this theory, we assume, without deciding, that the doctrine of strict liability as set forth in the Restatement applies when a seller has not yet sold his product or put it in the stream of commerce, but is getting it ready for such sale by having it

---

1. Appellants contend there is some other theory called "joint enterprise." They find this theory in Prosser & Keeton on Torts § 72 (5th Ed. 1984). A reading of this section discloses that what the authors are talking about is the same thing as a joint venture. When the enterprise is not for some commercial or business purpose, Prosser calls it a "joint enterprise," when it is for a business venture, he calls it a "joint venture." Equal right to control is required in either case.

**462**

processed by an independent contractor.[2] We also assume, without deciding, that the directors and officers of a corporation can be held liable on a basis of strict liability as set forth in the Restatement for injuries caused by the corporation's products.[3]

In the comments on the caveat to § 402A the Institute states:

"**p. Further processing or substantial change.** Thus far the decisions applying the rule stated have not gone beyond products which are sold in the condition, or in substantially the same condition, in which they are expected to reach the hands of the ultimate user or consumer. In the absence of decisions providing a clue to the rules which are likely to develop, the Institute has refrained from taking any position as to the possible liability of the seller where the product is expected to, and does, undergo further processing or other substantial change after it leaves his hands and before it reaches those of the ultimate user or consumer.

\* \* \* \* \* \*

The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes. No doubt there will be some situations, and some defects, as to which the responsibility will be shifted, and others in which it will not. The existing decisions as yet throw no light upon the questions, and the Institute therefore expresses neither approval nor disapproval of the seller's strict liability in such a case."

■ Raw asbestos ore has been held to be a "product" within the meaning of § 402A of the Restatement. *Hammond v. North American Asbestos Corporation*, 105 Ill.App.3d 1033, 61 Ill.Dec. 843, 435 N.E.2d 540 (1982), aff'd, 97 Ill.2d 195, 73 Ill.Dec. 350, 454 N.E.2d 210 (1983). There is no evidence in this case that the raw asbestos posed a danger of any kind to persons in the position of the appellants. It only became potentially dangerous to the appellants when it was in the process of being milled, thus creating dust, and after the process had taken place when the mill dumped the tailings in a tailings pile outside of the mill. The responsibility for preventing the escape of asbestos dust during the milling process rests upon the mill and not the Schwartzes. The responsibility for the tailings dumped also rests upon the mill and not the Schwartzes. We believe that the responsibility for discovering and prevention of the dangerous defect rests upon the mill and not upon the Schwartzes. We hold that the Schwartzes are not liable on the basis of strict liability as set forth in § 402A.

Appellants contend that certain "critical documents" had not been produced by the Schwartzes and therefore they allege summary judgment was inappropriate. This contention was based upon statements made by Lillian Schwartz in her deposition which was taken three days prior to oral argument on Schwartz's motion for summary judgment. The trial court judge heard oral argument on the Schwartz motion for summary judgment and took the matter under advisement so he could have an opportunity to fully review the deposition of Lillian Schwartz. After reviewing it he issued a minute entry granting summary judgment in spite of the appellants' contention that documents had not been produced. After reviewing the deposition of Lillian Schwartz, we conclude, as the trial court concluded, that there were no other documents that had not been turned over to her counsel and to the appellants.

Affirmed.

LACAGNINA, C.J., and HATHAWAY, J., concur.

---

2. In a caveat to § 402A, the Restatement states that it expresses no opinion as to whether the rule stated may not apply to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer.

3. Appellants did not sue Great Lakes Asbestos Corp.