**Consuelo ANGUIANO, et al., Plaintiffs,**

v.

**E.I. DuPONT de NEMOURS AND COMPANY, INC., a Delaware corporation, et al., Defendants.**

**No. CIV 92–298 TUC RMB.**

United States District Court,
D. Arizona.

Dec. 3, 1992.

Carter Morey, Haralson, Kinerk & Morey, P.C., Tucson, AZ, for plaintiffs.

Barry Fish, Stephen M. Bressler, Janet Napolitano and Michael Owen Miller, Lewis & Roca, Phoenix, AZ, for defendants.

## ORDER

BILBY, District Judge.

Twenty-two plaintiffs, each of whom had a temporomandibular joint (TMJ) made of Proplast implanted into his or her jaw between 1978 and 1986, sued DuPont, manufacturer of polytetrafluoroethylene

(PTFE)[1], on negligence and strict liability claims. PTFE was used by Vitek, Inc. (Vitek) to manufacture Proplast, which was then fabricated into the patented prosthesis that was implanted into the jaw of each plaintiff. The prostheses were implanted by oral surgeons. Plaintiffs alleged that the protheses injured them and that PTFE was the specific ingredient in the protheses responsible for the injuries.[2] They asserted that DuPont was liable because it breached its duty to warn them of the risks involved in having an implant made from PTFE inserted into their jaws.

DuPont moved for summary judgment against both the negligence and the strict liability claims asserting that as a raw materials supplier to a medical device manufacturer, it owed no duty to the plaintiffs, who were the ultimate consumers of the medical devices. DuPont also moved to sever each plaintiff's claim from those of the others. Plaintiffs moved for the court's permission to use evidence and information obtained through discovery in parallel cases.

After careful consideration of all information submitted by both parties, the court finds that there is no genuine issue as to the fact of DuPont's duty to warn the plaintiffs and that DuPont is entitled to judgment as a matter of law. DuPont had no legal duty to warn the plaintiffs.

Having found that DuPont is entitled to judgment as a matter of law, the court finds it unnecessary to address the remaining motions.

## I. FACTS

1. Vitek is an independent company neither owned nor controlled by DuPont. Vitek was founded by Dr. Homsy, a former employee of DuPont.

2. Vitek, via Dr. Homsy, designed, patented, and manufactured Proplast and designed, patented, and manufactured temporomandibular joint implants from the Proplast.

1. PTFE is more commonly called Teflon.

2. Plaintiffs asserted that under the load which exists in the TMJ, the PTFE abraded. The parti-

3. DuPont supplied PTFE to Vitek.

4. PTFE is safe and chemically inert in the state in which it was sold to Vitek.

5. A patented eight-step process involving mixing, filtering, compressing, drying, rolling, sintering, leaching, and redrying is used to convert PTFE into Proplast.

6. Prior to sale, DuPont informed Vitek, in writing, of certain studies that had found PTFE to be unsatisfactory when used in hip joints in dogs. Dr. Homsy indicated that he was aware of the studies, that they were flawed, and that Proplast was superior to the pure PTFE used in the hip joints.

7. DuPont informed Vitek that PTFE was "made for industrial purposes only" and that DuPont did not market any "medical or surgical grades" of PTFE. DuPont advised Vitek that in evaluating or using PTFE for medical or surgical purposes, Vitek must rely on its own medical and legal judgment without any representation on the part of DuPont.

8. DuPont expressly conditioned sale of PTFE to Vitek on Vitek's promise to comply with all FDA regulations. Dr. Homsy signed a written acknowledgement of this commitment.

9. Vitek participated in a series of FDA sponsored hearings before three expert medical panels. In 1982, the FDA approved Proplast and approved the sale of Proplast implants to oral surgeons and other licensed physicians. DuPont did not participate in these hearings.

10. Beginning no later than 1984, DuPont knowingly allowed Vitek to use DuPont's name and registered trademark in advertisements and literature about Proplast implants.

11. Neither DuPont nor Vitek warned the oral surgeons or the recipients of the implants about any potential risks relative to PTFE.

cles caused a destructive, foreign body, multinucleated giant cell reaction.

## II. ANALYSIS

### A. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Whether a fact is material depends on the substantive law at issue. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The question to be answered is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* at 251–252, 106 S.Ct. at 2512. The initial burden is on the moving party to show that there is no genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675 (9th Cir.1984). The court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2510. The court must, therefore, examine the facts to determine whether they are material, and assess the inferences that might reasonably be drawn from them.

### B. *Arizona Tort Law*

Absent contrary Arizona law, Arizona courts apply the law of the Restatement (Second) of Torts (hereafter R2T) to cases sounding in tort. *Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962, 968 (Ariz.1990).

#### 1). The Duty of Care

■ The issue of whether a defendant owes a duty of due care to a particular plaintiff or group of plaintiffs is usually one that the court decides as a matter of law. *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 706 P.2d 364, 366 (Ariz.1985). In determining whether a duty exists, the court must assess whether the relationship between the parties is such that the defendant was under a duty or obligation to use some care to avoid or prevent injury to the plaintiff. *Id.,* at 368, 706 P.2d 364. If the court determines that there is no duty, the defendant is not liable even though he may have acted negligently in light of foreseeable risks. *Id.*

#### 2). Negligent or Strict Product Liability

■ In Arizona, both negligence and strict liability standards impose a duty to produce products with appropriate warning instructions and other safety features. *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271, 277 (Ariz.Ct.App.1978).

■ Section 388 of R2T deals with negligent product liability while Section 402A deals with strict product liability. The elements of both negligence and strict liability are the same with the exception that in negligence, the plaintiff must show that the defendant breached its duty of due care and in strict liability the plaintiff must show that the product was unreasonably dangerous. This distinction lessens in failure to warn cases. Under either theory, the issue is whether an adequate warning was provided. *Higgins v. E.I. DuPont de Nemours, Inc.,* 671 F.Supp. 1055, 1059 (D.Md.1987).

### C. *Bases for Finding a Duty to Warn*

#### 1). Statutory or Regulatory Labelling Requirements

■ No statutory or regulatory labelling requirement imposed on DuPont a duty to warn the plaintiffs.

Federal law requires that medical device manufacturers develop appropriate warnings and ensure that physicians receive them. 21 U.S.C. §§ 352(f) and 360d(a)(2)(C).

A medical device is:

> ...an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is
>
> ....
>
> (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment or prevention of disease, in man or other animals, or
>
> (3) intended to affect the structure or function of the body of man or other animals.

21 U.S.C. § 321(h)

Plaintiffs asserted that PTFE was a medical device because "Proplast is, for all intents and purposes, Teflon (PTFE). The primary *component* of Proplast is Teflon." (emphasis in original). However, the affidavit of David Link, who was employed by the FDA for ten years, was responsible for regulating medical devices, and is familiar the FDA's view of Vitek's Proplast implant material, indicated that PTFE is not a medical device. Citing H.R.Rep. No. 853, 94th Cong.2d Sess., at 14 (1976), Mr. Link indicated that a "component" may be treated as a device *only* when it meets the statutory criteria: i.e., as sold it is "intended for use in the diagnosis of disease or other conditions ..." or "intended to affect the structure or any function of the body of man...." Plaintiffs did not attempt to refute information in Mr. Link's affidavit. Thus, PTFE is neither a medical device nor a component of a medical device and not subject to the statutory labelling requirements applicable to medical devices.

#### 2). Supplying Chattel Known to be Dangerous

■ Section 388 of R2T imposes a duty to warn on a "chattel" supplier if the supplier:

> a). knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> b). has no reason to believe that those for whose use the chattel is supplied will realize its dangerous conditions, and
>
> c). fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

This duty to inform arises when the chattel is supplied directly or through a third person.

Comment n provides:

> Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it.

This section has been held to be applicable in products cases arising either in negligence or in strict liability. (*Shell Oil, supra*, 581 P.2d at 278).

Initially, the court had to decide whether the PTFE supplied by DuPont was a chattel. The chattels discussed in the R2T are finished products such as guns and ladders. Several courts have, however, applied this section of the R2T to items such as PTFE, which were supplied in bulk to a second manufacturer that produced the finished product. For example, it has been applied to chemicals that were used in the manufacture of paint (*Higgins, supra*).

■ A duty to warn is imposed on the manufacturer of a product that is incorporated into a second product by another party only if two conditions are met: the first manufacturer knows or has reason to

know that the chattel is likely to be dangerous for the use it is supplied; and the original manufacturer has no reason to believe that the eventual user will realize the dangerous condition of the chattel. If these two conditions are present, the original manufacturer will be liable if it fails to exercise reasonable care to inform the eventual user of the dangerous conditions. *Suchomajcz v. Hummel Chemical Co.*, 524 F.2d 19, 26–27 (3rd Cir.1975).

■ Assuming that PTFE was a chattel, the next question was whether DuPont knew or had reason to know that PTFE was unsuitable for the TMJ implant. It did not.

DuPont knew of some early studies in which difficulties were experienced when pure PTFE was carved by hand and used as a load-bearing hip joint. This does not mean that DuPont knew or had reason to know that when additional ingredients (carbon or aluminum oxide) were added to PTFE, when it was subjected to a patented eight-step process, and when manufactured by machine, that Proplast would not work in TMJ implants. This also does not mean that DuPont knew that the TMJ was a load-bearing joint and might be subject to the same difficulties as the hip joint.[3]

The actions taken by DuPont did not indicate that it believed PTFE was unsuitable for the TMJ implant. Rather, they were the actions of a supplier who wanted to ensure that its purchaser was well informed about the product being purchased. DuPont informed Vitek of the early studies that raised questions about the efficacy of PTFE use in joint implants, it informed Vitek that PTFE was not intended for surgical or medical use, and it required Vitek to sign a commitment to comply with applicable statutes and regulations. Dr. Homsy informed DuPont that he was aware of the studies about which DuPont was concerned, that the studies were flawed and that the product he intended to produce was superior to that used previously.

Shortly after DuPont began supplying PTFE for use by Vitek in manufacturing

Proplast, new studies tended to show that it was safe and effective for use in joint implants. In 1982, the FDA specifically approved PTFE, as modified by Vitek, for use in implants. In doing so, the FDA indicated that the safety and effectiveness of Proplast had "been established through long-term clinical trials." None of this information provided DuPont with knowledge or reason to know that PTFE was dangerous for use in TMJ implants.

Without knowledge or reason to know that PTFE was dangerous for use in TMJ implants, there was nothing about which DuPont had a duty to warn plaintiffs.

■ This approach was used in *Shell Oil*, on which Plaintiffs relied. The court affirmed judgment for the plaintiffs against the bulk supplier of a highly flammable, potentially explosive liquid. The court said, "Assuming a duty [to warn the immediate purchaser] exists, whether a warning beyond the manufacturer's immediate vendee is required in a particular case depends upon various factors." *Id.*, 581 P.2d at 278. Thus, Plaintiffs' reliance on this case was misplaced. There must first be a duty to warn one's immediate purchaser before there can be a question about a duty to warn those beyond the immediate purchaser. In this case, because DuPont had no knowledge and no reason to know that PTFE was dangerous for use in TMJ implants, it did not have a duty to warn even Vitek, much less the plaintiffs.

### 3). Selling an Unreasonably Dangerous Product

■ Section 402A of R2T provides:

1). One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

 a) the seller is engaged in the business of selling such a product, and

 b) it is expected to and does reach the user or consumer without substantial

---

**3.** Indeed, a 1972 study indicated that unlike the hip joint, the TMJ was not under heavy load.

change in the condition in which it is sold.

This section of the R2T also does not give rise to a duty by DuPont to warn plaintiffs about PTFE.

PTFE is safe and chemically inert in the state in which it was supplied to Vitek. It has a wide variety of uses. PTFE was not in a defective condition nor was it dangerous when sold by DuPont to Vitek. It was the use to which Vitek put the PTFE that made it dangerous.

Also, PTFE did not reach the consumer without substantial change. Vitek subjected the PTFE to a patented eight-step process that created a new patented material called Proplast. This new product contained additional ingredients (carbon and sodium chloride), was porous rather than nonporous as PTFE, and had high surface tension rather than the low surface tension of PTFE.

An Arizona case, *Cothrun v. Schwartz*, 156 Ariz. 459, 752 P.2d 1045 (Ariz.Ct.App. 1988), reached a similar conclusion. In affirming defendant's motion to dismiss for failure to state a claim, the court held that defendant, who had sold asbestos to a mill and had sold property allegedly contaminated by asbestos from that mill, was not liable for the damage because "[t]here is no evidence in this case that the raw asbestos posed a danger of any kind to persons in the position of the appellants. It only became potentially dangerous to the appellants when it was in the process of being milled, thus creating dust, and after the process had taken place when the mill dumped the tailings in a tailings pile outside of the mill." *Id.*, 752 P.2d at 1048.

## D. *Defenses to the Duty to Warn*

### 1) Bulk Supplier of Raw Materials

 Courts that have addressed the issue before this court, have ruled that when raw materials are supplied in bulk for use in the formulation of a drug or medical device, it is the manufacturer of the drug or medical device—and not the raw material supplier—that has a duty to develop and provide adequate warnings. This doctrine, which derives from Comment n to R2T § 388 (*See supra*), protects a bulk supplier from the usual duty to provide the eventual consumer of a product with warnings of dangers associated with the product. The protection arises if the bulk supplier warns its immediate purchaser with the intention that such warning be given to the ultimate consumer. *Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008, 1012 (8th Cir.1989).

Most bulk supplier cases involve suppliers who are aware of inherent dangers in the materials being supplied. DuPont did not need to rely on the bulk supplier defense because, as indicated above, there was no reason for DuPont to believe that it was supplying a product likely to be dangerous for the use for which it was supplied nor was PTFE defective or unreasonably dangerous.

*George v. Parke–Davis*, 107 Wash.2d 584, 733 P.2d 507 (Wash.1987) is factually similar to this case. Plaintiff, in essence, asked the court to create vertical liability between the bulk supplier of DES and the company that manufactured the tablets that caused plaintiff's injury. In holding that the bulk supplier was not liable, the court said:

> DES is not inherently harmful, and still is prescribed today for ailments not associated with pregnant women. Thus, it is the way in which DES is used, and not DES per se, which is harmful. *Id.*, 733 P.2d at 515.

In this case, PTFE is not inherently harmful. The harm arose from the manner in which PTFE was used.

*White v. Weiner*, 386 Pa.Super. 111, 562 A.2d 378 (1989), *aff'd*, 525 Pa. 572, 583 A.2d 789 (1991) also is instructive for this case. Ely Lilly was the bulk supplier of protamine sulfate, which was manufactured into a prescription drug that allegedly caused the death of plaintiff's decedent. Plaintiff asserted that Ely Lilly failed to provide an adequate warning to the manufacturing company.[4]

---

**4.** Plaintiff did not assert failure to warn the ultimate consumer because it is well-settled law

The court declined to impose a duty to warn on Ely Lilly. In affirming summary judgment for Ely Lilly, the court held that "[t]he rigorous testing and reporting required of final manufacturers by federal law renders superfluous detailed warnings by bulk suppliers of those same manufacturers." *Id.*, at 385. The court indicated that it was enough that the bulk supplier comply with the labelling requirements to which it was subject. *Id.*

Plaintiffs asserted that DuPont's reliance on these cases was misplaced because DuPont, unlike the defendants in these cases, was not in compliance with the labelling requirements to which it was subject. The labelling requirements to which plaintiffs referred are imposed on the manufacturers of medical devices and as indicated above, PTFE is not a medical device and DuPont is not a manufacturer of medical devices. DuPont was not in violation of any labelling statute or regulation. The reasoning in both the *George* and *White* cases is applicable to this case.

Plaintiffs relied on *Bryant v. Technical Research Co.*, 654 F.2d 1337 (9th Cir.1981) for the proposition that bulk suppliers do have a duty to warn others in the chain of distribution. The *Bryant* court reversed a summary judgment for Eastman, bulk supplier of a chemical that was manufactured into a lacquer thinner that allegedly injured the plaintiff. Plaintiffs' reliance on *Bryant* was misplaced. That summary judgment was reversed because there was a material question about the adequacy of Eastman's warning to its immediate purchaser. As indicated above, a bulk supplier has a duty to warn its immediate purchaser if the product it is selling is dangerous. The *Bryant* court concluded that "[u]pon remand the trial judge should determine whether, in evaluating Eastman's conduct, the jury should consider if the warnings given adequately indicated to those in the chain of distribution the scope and nature of the risk inherent in [the chemical]." *Id.*, at 1348.

The question before the *Bryant* court was different from the question before this

that the duty to warn about prescription drugs

court. Plaintiffs in this case raised no question about the adequacy of DuPont's warning to Vitek. In addition, the adequacy of a warning cannot become a question until it is determined that there is a duty to warn. PTFE was not defective or unreasonably dangerous when sold to Vitek, which means that DuPont did not have a duty to warn even Vitek about PTFE. This means that DuPont also did not have a duty to warn plaintiffs.

2) Supplier of a Component Part

Cases that have determined the liability of a supplier of a component part of a manufactured chattel other than a medical device also support the court's finding that DuPont had no duty to warn the plaintiffs.

PTFE may be viewed as an ingredient or component of Proplast. The supplier of a carefully designed and manufactured component part can be liable for failure to warn if the failure to warn was cause-in-fact and proximate cause of the injuries sustained by the plaintiffs. *Frazier v. Materials Transp. Co.*, 609 F.Supp. 933, 935 (W.D.Pa.1985). The question of causation becomes one of law when any causal connection between defendant's negligence and plaintiff's injury is remote. *Id.*

The court finds that any causal connection between DuPont's failure to warn the plaintiffs and the injuries that they sustained was so remote that DuPont cannot be subjected to liability for the injuries. DuPont supplied PTFE to Vitek. DuPont did not design, patent, and manufacture Proplast. Vitek did. DuPont did not design, patent, and manufacture the TMJ implant. Vitek did. DuPont did not evaluate and approve the safety and effectiveness of the TMJ implant. The FDA did. DuPont did not insert the implants into the jaws of the plaintiffs. Oral surgeons did.

III. CONCLUSION

The court finds that DuPont did not have a duty to warn plaintiffs because:

is imposed on the prescribing doctor.

1) no statute or regulation imposed such a duty,

2) DuPont did not know and had no reason to know that PTFE was dangerous for the use for which it was supplied to Vitek, and

3) the PTFE supplied by DuPont to Vitek was not defective or unreasonably dangerous.

THEREFORE, IT IS ORDERED that defendant DuPont's motion for summary judgment is GRANTED. Judgment is entered for DuPont and against plaintiffs.

The court finds it unnecessary to address the remaining motions.