**Krista BOND, Susan K. Baumgartner, Holly D. Nemitz, Kathleen A. Rutland, Paul Sidey, Verna Weatherly, and Ginger Walker Wray, Plaintiffs–Appellants,**

**v.**

**E.I. Du PONT De NEMOURS AND COMPANY, a Delaware corporation; Lutheran Medical Center, a Colorado corporation; Mercy Medical Center, a Colorado corporation; Swedish Medical Center, a Colorado corporation; and University of Colorado Health Sciences Center, a Division of University Hospital, Defendants–Appellees.**

No. 92CA0624.

Colorado Court of Appeals,
Div. V.

June 3, 1993.

As Modified on Denial of Rehearing
July 22, 1993.

Certiorari Denied Feb. 28, 1994.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

**1116**

Peter A. Goldstein, P.C., Peter A. Goldstein, Colorado Springs, for plaintiffs-appellants.

Davis, Graham & Stubbs, Michael J. Gallagher, Raymond P. Moore, Denver, Lewis and Roca, Janet Napolitano, Edward M. Mansfield, Phoenix, AZ, for defendant-appellee E.I. Du Pont De Nemours and Co.

Breit, Best, Richman and Bosch, P.C., Alan E. Richman, Kristen L. Mix, Denver, for defendant-appellee Lutheran Medical Center.

Montgomery Little Young Campbell & McGrew, P.C., Kevin J. Kuhn, Karen B. Best, Englewood, for defendants-appellees Mercy Medical Center, Swedish Medical Center and University of CO Health Sciences Center.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy

M. Tymkovich, Sol. Gen., Joanne M. McDevitt, Sp. Asst. Atty. Gen., Denver, for defendant-appellee University of CO Health Sciences Center.

Opinion by Judge BRIGGS.

In these consolidated actions to recover for personal injuries, plaintiffs, Krista Bond, Susan K. Baumgartner, Holly D. Nemitz, Kathleen A. Rutland, Paul Sidey, Verna Weatherly, and Ginger Walker Wray, appeal the judgment of dismissal entered under C.R.C.P. 12(b) and C.R.C.P. 56 in favor of defendant E.I. Du Pont De Nemours and Company (DuPont) and defendants Lutheran Medical Center, Mercy Medical Center, Swedish Medical Center, and University of Colorado Health Sciences Center (collectively Hospitals). Plaintiffs contend the trial court erred in ruling that, as a matter of law, the Hospitals were not strictly liable under § 13–21–402(2), C.R.S. (1987 Repl.Vol. 6A) and that DuPont owed no duty to plaintiffs in either theories of strict liability or negligence. We affirm.

Vitek, Inc., (Vitek) designed, manufactured, and sold to hospitals as a prescription-only device a prosthesis known as Proplast Teflon Interpositional Implant (Implant) to correct temporomandibular joint (TMJ) disorders. Each plaintiff had an Implant surgically placed in the jaw by an oral surgeon at one of the Hospitals.

The Implant is composed of layers of various synthetic substances. The top layer is Proplast, a product designed and manufactured by Vitek by combining polytetrafluoroethylene, commonly known as Teflon, with either carbon or aluminum oxide. The bottom layer is pure Teflon. DuPont manufactures and sells Teflon in resin, powder, and fiber form.

Plaintiffs allege that the Implant failed with each plaintiff because the product could not withstand the pressures or the friction in the TMJ. As a result, it disintegrated in the joint, and the separation of particles of Teflon from the Implant caused plaintiffs to suffer tissue damage.

Plaintiffs initially sued only Vitek. However, that action was automatically stayed when Vitek filed for Chapter 7 bankruptcy protection. *See* 11 U.S.C. § 362 (1988). Plaintiffs then filed lawsuits against the Hospitals and DuPont. Vitek is not a party in this appeal.

## I. The Hospitals

Plaintiffs' complaints against the Hospitals are based solely on a strict liability theory. They assert that although the Hospitals are not the actual manufacturers of the Implant, they are strictly liable under § 13–21–402, C.R.S. (1987 Repl.Vol. 6A).

Section 13–21–402(1), C.R.S. (1987 Repl. Vol. 6A) limits the strict liability of a seller in a product liability action to a seller who is also the manufacturer of the product or a part of the product claimed to be defective. Section 13–21–402(2), C.R.S. (1987 Repl.Vol. 6A) provides an exception to this rule:

If jurisdiction cannot be obtained over a particular manufacturer of a product or a part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom jurisdiction can be obtained shall be deemed, for the purposes of this section, the manufacturer of the product.

■ Plaintiffs argue that, because their actions against Vitek as manufacturer of the Implant were automatically stayed, the courts in which those actions were filed no longer have jurisdiction over Vitek. Therefore, they conclude, the Hospitals are statutory manufacturers under § 13–21–402(2) because they were sellers of the Implant. We disagree.

Neither party has addressed, and we do not decide, the impact on jurisdiction of a discharge or other conclusion of a bankruptcy proceeding. The only issue presented is whether the automatic stay resulting from Vitek merely filing the petition in bankruptcy deprived the trial court of jurisdiction for purposes of § 13–21–402(2).

■ An action commenced in state court can, in some circumstances, be continued after a petition in bankruptcy has been filed. For example, the bankruptcy court may dismiss a petition filed by a corporation under chapter 7, in which case the stay would be

lifted and a civil action previously filed in state court could proceed. *See* 11 U.S.C. § 707 (1988).

■ We therefore agree that "a stay of a suit pending in another court against the bankrupt is not a dismissal of the suit nor does it deprive the court of jurisdiction over the matter; it merely suspends the proceedings." *David v. Hooker, LTD.*, 560 F.2d 412, 418 (9th Cir.1977); *see Hill v. Harding*, 107 U.S. 631, 2 S.Ct. 404, 27 L.Ed. 493 (1882); 1A *Collier on Bankruptcy* § 11.07 (J. Moore & L. King 14th ed. 1977). (The similar section on duration of stay in 2 *Collier on Bankruptcy* § 362.06 (L. King 15th ed. 1993) does not contain this specific proposition, but in our view it continues to be a correct statement of the law. *See* 11 U.S.C. §§ 362(a) and 362(c) (1988)).

As a result, it is unnecessary to address the Hospitals' separate contention that they were not principal distributors or sellers subject to liability under § 13–21–402(2).

## II. Defendant DuPont

Plaintiffs argue that the trial court erred in concluding that, as a matter of law, DuPont did not owe plaintiffs a duty either in strict liability or negligence. In the circumstances presented here, we disagree.

### A. *Strict Liability*

Plaintiffs contend that DuPont is strictly liable as a component part manufacturer of the Implant based on two separate theories. The first is that DuPont manufactured and sold a product unreasonably dangerous when incorporated into Vitek's product. The second is that DuPont as a seller is subject to strict liability under §§ 13–21–401 and 13–21–402, C.R.S. (1987 Repl.Vol. 6A) because it was a "seller" with "actual knowledge" of the "defect."

### 1. Design Defect

■ It is undisputed that DuPont played no role in the design or manufacture of the Implant, and thus, it cannot be held liable as a manufacturer of the final product. Plaintiffs also do not contest that Vitek designed, manufactured, and sold its Implant subject to

the Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 301 et seq. (1988), and implementing regulations. *See* 21 C.F.R. § 860 et seq. (1992). Plaintiffs nevertheless claim that DuPont knew or should have known that Vitek's product, with Teflon incorporated into it, was unreasonably dangerous and that DuPont thus had a duty to warn physicians and their patients of the possible dangers or to refrain from selling Teflon to Vitek. We disagree.

■ A component-part manufacturer or raw-material supplier has no duty to foresee all the dangers that may result from the use of a final product which contains its component part or materials. *See Shaw v. General Motors Corp.*, 727 P.2d 387 (Colo.App.1986). This is true even if the manufacturer or supplier has knowledge of the design and use of the final product. *Childress v. Gresen Manufacturing Co.*, 888 F.2d 45, 49 (6th Cir.1989) ("[S]uch a standard would be contrary to public policy, as it would encourage ignorance on the part of component part manufacturers or alternatively require them to 'retain an expert in the client's field of business to determine whether the client intends to develop a safe product.' ").

■ A manufacturer of component parts or supplier of raw materials can be held strictly liable based on a claim of design defect or failure to warn only if (1) the materials or component parts are in a defective condition or without a warning are unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold; (3) the design defect or failure to warn is the cause of the plaintiff's injury; (4) the defendant sold the product and is in the business of selling such products; and (5) plaintiff sustained damages as a result. *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978).

■ Defects alleged in design, including a failure to warn, are not easily attributed to one component part, group of parts, or the final product. *See Union Supply Co. v. Pust, supra.* The difficulty is due in part to the fact that the determination of the existence

of such a "defect" turns on a risk-benefit or equivalent analysis of what constitutes an unreasonable danger. *See Fibreboard Corp. v. Fenton*, 845 P.2d 1168 (Colo.1993).

Nevertheless, a plaintiff must present evidence from which a jury could find that any "defect" was in the "design" of the component part, not the final product. *See Union Supply Co. v. Pust, supra.* Thus, the focus of analysis is on whether the component parts or raw materials were unreasonably dangerous as a result of a failure to warn or other design defect at the time of delivery to the manufacturer of the final product. *See Shaw v. General Motors Corp., supra.*

Here, plaintiffs do not contest that Teflon is safe for multiple uses. There is no evidence that Teflon has any "inherent dangers" generally unknown to purchasers such as would expose DuPont to liability for failure to warn of an unreasonably dangerous condition. *See Shaw v. General Motors Corp., supra.* Any danger resulted from the manufacture and particular use of the Implant as a final product which contained DuPont's raw material as a component part.

Courts in other jurisdictions which have addressed similar claims against DuPont have for similar reasons concluded that it is not liable for the injuries caused by Vitek's product. *See Miller v. E.I. DuPont de Nemours And Co.*, 811 F.Supp. 1286, 1287 (E.D.Tenn.1992) ("The plaintiffs have not provided any evidence tending to show that the [Teflon] fibers and resins the defendant supplied to Vitek were in any manner defective or unsafe."); *Anguiano v. E.I. DuPont de Nemours And Co.*, 808 F.Supp. 719, 725–26 (D.Ariz.1992) ("In this case, [Teflon] is not inherently harmful. The harm arose from the manner in which [it] was used.... [Teflon] was not defective or unreasonably dangerous when sold to Vitek, which means that DuPont did not have a duty to warn even Vitek about [Teflon]. This means that DuPont also did not have a duty to warn plaintiffs.").

We agree with these decisions and conclude the trial court properly found as a matter of law that there was nothing unrea-

sonably dangerous or unsafe about Teflon which required DuPont to provide a warning to the ultimate users or consumers or to refrain from selling its product to Vitek. *See Eggert v. Mosler Safe Co.*, 730 P.2d 895 (Colo.App.1986); *Shaw v. General Motors Corp., supra; Childress v. Gresen Manufacturing Co., supra.*

### 2. Seller With Actual Knowledge

A seller is deemed to be a manufacturer subject to strict liability if the seller "has actual knowledge of a defect in a product...." Section 13–21–401. Plaintiffs assert that DuPont knew Vitek intended to use the Teflon in a way that was unreasonably dangerous and that, consequently, DuPont should be held strictly liable. We disagree.

The parties do not address the issue of whether an "upstream" supplier can be held liable as a "seller" under § 13–21–402. Even if we were to assume that the statute can be so construed, plaintiff has failed to establish a genuine issue of material fact that would render DuPont liable as a "seller."

The statute deems a seller a manufacturer only to the extent that the seller has "actual knowledge of the defect." "In failure-to-warn cases it is the lack or insufficiency of a warning that makes a product both defective and unreasonably dangerous." *Fibreboard Corp. v. Fenton, supra*, 845 P.2d at 1173 (fn. 10). Thus, to hold a seller liable as a manufacturer under § 13–21–401(1), a plaintiff must establish that the seller not only had actual knowledge of the design and use of the final product, but also actual knowledge that the final product was unreasonably dangerous without a warning. This interpretation avoids placing an undue burden on suppliers of raw materials and manufacturers of component parts, particularly when, as here, the manufacturer of the final product is already subject to government regulation. *See Childress v. Gresen Manufacturing Co. supra; Tidler v. Eli Lilly & Co.*, 851 F.2d 418 (D.C.Cir.1988).

No facts have been presented from which a jury could conclude that DuPont had actual knowledge that the Implant was unreasonably dangerous. DuPont informed Vitek in a

letter that it had conducted no tests to determine the suitability of its raw materials for use in the manner Vitek intended and that there was "a growing awareness of the lack of basic knowledge concerning the properties required of a synthetic material when it is used to replace bone, fascia, blood vessels or other body tissues." DuPont further stated it had "no knowledge of the suitability of 'Teflon' for [Vitek's proposed] medical use, and since the contemplated use is one that [Vitek] propose[d] and has not been recommended by [DuPont], it must be understood that [Vitek is] relying upon [its] own medical judgment as to [Teflon's] safety and effectiveness." The letter concluded by conditioning the sale of Teflon to Vitek on its understanding that Vitek "assume[s] full responsibility for any consequences which may result directly or indirectly from [the use of Teflon]."

Dr. Homsy, Vitek's principal, responded in a letter that he was more knowledgeable in this specific area than DuPont and that DuPont's research in this area was "crucially incomplete." These assertions were based upon Dr. Homsy's many years of experience in the field and studies supposedly demonstrating that adverse reactions in some previous studies were caused by the "mechanical form" of the Teflon used rather than the chemical components of the Teflon itself. This letter also discounted, for the same reasons, other limited studies performed with artificial hips in humans.

This correspondence is insufficient to create a genuine issue of fact as to whether DuPont had actual knowledge that the Implant was unreasonably dangerous to users or consumers. Plaintiffs presented no other evidence to establish that DuPont had actual knowledge that the Implant was unreasonably dangerous. Without such evidence, the trial court properly granted summary judgment on the claim that DuPont was a "seller" for purposes of § 13–21–402.

## B. *Negligence*

Plaintiffs contend that DuPont knew or should have known that Teflon was unreasonably dangerous when used in human joints and therefore owed some form of duty to plaintiffs. We disagree.

Whether a defendant owes a duty of care to prevent injuries to others is a question of law. *Hilberg v. F.W. Woolworth Co.*, 761 P.2d 236 (Colo.App.1988). This determination requires consideration of the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *Shaw v. General Motors Corp., supra.*

To the extent plaintiffs assert that DuPont had a duty to provide a warning to physicians and patients, we disagree with such a contention.

Although there is a distinction between claims for negligence and strict liability based on failure to warn, the same evidence will frequently be used to establish both claims. *See Union Supply Co. v. Pust, supra.* Further, both failure-to-warn and design-defect cases employ "negligence terms" to assist a trier of fact in determining whether a product is defective and unreasonably dangerous. *See Fibreboard Corp. v. Fenton, supra.* Likewise, the same analysis which leads to the conclusion that DuPont had no duty to warn plaintiffs under a theory of strict liability leads us to conclude that it had no duty to warn under a theory of negligence.

We further conclude DuPont had no duty to refrain from selling its product to Vitek. As already noted, there was no evidence that DuPont had actual knowledge that the Implant was unreasonably dangerous. In these circumstances, the social utility of permitting DuPont to grant relatively unrestrained access to purchasers of its product is high, especially here, because it encourages development of new products in the medical field and does not unnecessarily inhibit technological advances. Conversely, there is little social utility in placing the burden on a manufacturer of component parts or supplier of raw materials of guarding against injuries caused by the final product when the component parts or raw materi-

als themselves were not unreasonably dangerous. *See Shaw v. General Motors Corp., supra; Jordan v. Whiting Corp.,* 49 Mich. App. 481, 486, 212 N.W.2d 324, 328 (1973), *rev'd in part on other grounds,* 396 Mich. 145, 240 N.W.2d 468 (1976) ("The obligation that generates a duty to avoid injury to another which is reasonably foreseeable does not—at least yet—extend to the anticipation of how manufactured components not in and of themselves dangerous or defective can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another.").

Further, there is again even less reason to impose such a duty when, as here, the designer of the final product presumably possesses highly specialized knowledge of the field in which the product exists and that designer is under a duty imposed by the government to conduct specific tests and provide particular warnings. *See White v. Weiner,* 386 Pa.Super. 111, 562 A.2d 378 (1989); *George v. Parke–Davis,* 107 Wash.2d 584, 733 P.2d 507 (1987).

We hold that, as the supplier of raw materials used in the medical device designed, manufactured, and sold by Vitek, DuPont owed no duty to plaintiffs under a theory of negligence either to provide them with any warnings or to refrain from selling its raw materials to Vitek. *See Childress v. Gresen Manufacturing Co., supra; cf. Hilberg v. F.W. Woolworth Co., supra.*

The judgment is affirmed.

RULAND and ROTHENBERG, JJ., concur.