Carol **APPERSON**, Sandra Bott, Danella Poling, et al., Plaintiffs–Appellants,

v.

**E.I. du PONT de NEMOURS & COMPANY, Defendant–Appellee.**

Janet **STYCK**, Plaintiff–Appellant,

v.

**E.I. du PONT de NEMOURS & COMPANY, Defendant–Appellee.**

Nos. 93–3947, 93–3950.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1994.

Decided Nov. 18, 1994.

Joseph Phebus, Nancy J. Glidden (argued), Phebus, Winkelmann, Wong, Bramfeld & Zopf, Urbana, IL, for plaintiffs-appellants.

Eugene A. Schoon, Robert A. Downing, Amy D. Mayber, Sidley & Austin, Chicago, IL, David Cantelme, Barry Fish, Edward M. Mansfield (argued), Lewis & Roca, Phoenix, AZ, Ross F. Schmucki, E.I. du Pont de Nemours and Co., Wilmington, DE, for defendant-appellee in No. 93–3947.

Eugene A. Schoon, Barbara J. Rakley, Robert A. Downing, Amy D. Mayber, Sidley & Austin, Chicago, IL, Barry Fish, Edward M. Mansfield (argued), Lewis & Roca, Phoenix, AZ, Ross F. Schmucki, E.I. du Pont de Nemours and Co., Wilmington, DE, for defendant-appellee in No. 93–3950.

Before SPROUSE,* CUDAHY, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiffs in these diversity cases brought products liability actions against E.I. du Pont de Nemours and Company (DuPont) claiming they were injured by medical prostheses manufactured with DuPont materials. The district court granted summary judgment in favor of DuPont, and the plaintiffs' suits were consolidated on appeal.

## I.

After experiencing problems with their temporomandibular joints (TMJ) (the joint connecting the upper and lower jaw), the plaintiffs received a medical prosthesis known as the Proplast TMJ Interpositional Implant. After implantation, plaintiffs allege that the Proplast TMJ Implants failed, abrading the surrounding bone and triggering immune system reactions. The plaintiffs were required to undergo further surgery to remove the implants and, in some cases, to reconstruct the facial bones.

The Proplast TMJ Implant was designed, manufactured and sold by Vitek, Inc., a now-bankrupt company founded by Dr. Charles Homsy, a former DuPont scientist. In the late 1960s, Homsy developed and patented the biomaterial "Proplast," a spongy implant material designed to encourage tissue ingrowth. Proplast is made by combining carbon and soluble ingredients with polytetrafluorethylene (PTFE, better known by its tradename Teflon), a safe and inert plastic sold in resin, powder or fiber form. Although the physical and mechanical properties of Teflon change during the multi-stage Proplast manufacturing process, its chemical composition remains the same. The Proplast TMJ Implant is a pre-formed Proplast device, and received FDA approval for sale in 1983.

DuPont supplied Vitek with the Teflon for the Proplast TMJ Implants. Plaintiffs allege that DuPont knew that Vitek intended to use the Teflon to manufacture Proplast TMJ Implants, and at one point considered entering into a joint marketing agreement with Vitek. DuPont also knew that Teflon implants had met with mixed success. In particular, published studies in the 1960s had shown that Teflon tended to abrade when used in hip implants.

When Vitek first sought to purchase Teflon from DuPont, DuPont informed Vitek of these studies of hip implants. DuPont also advised Vitek that its Teflon was industrial grade and had not been manufactured for medical applications, and that DuPont had not studied its suitability for medical use. DuPont conditioned the sale of Teflon on Vitek's acknowledgement of DuPont's disclaimers and agreement to use its own medical judgment as to the safety of Teflon in the TMJ Implant. Upon passage of the Medical Device Amendments of 1976 to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, DuPont again wrote to Vitek, reiterating that Teflon was not manufactured for medical purposes and Vitek would be required to exercise its own judgment and comply with all FDA regulations.

The plaintiffs contend that DuPont knew that Teflon was not appropriate for use in the Proplast TMJ Implant. The plaintiffs alleged three theories of liability: that DuPont was strictly liable for selling an unreasonably dangerous product; that DuPont was strictly liable for failing to warn both Vitek and the plaintiffs that Teflon was unsuitable for use as a TMJ Implant; and that DuPont was negligent in supplying Teflon to Vitek and failing to warn plaintiffs when it knew that it was unsafe in human implants. DuPont responded that it owed no duty to the plaintiffs for injury caused by a specialized end-use of its product; that the Teflon in

---

* The Hon. James M. Sprouse, Circuit Judge for the United States Court of Appeals for the Fourth Circuit, is sitting by designation.

**1106**

Proplast was substantially altered; that Du-Pont satisfied any duties since Vitek was a sophisticated purchaser; and that any state claims were preempted by federal drug laws.

The district court granted summary judgment to DuPont, finding that it owed no duty of care to the plaintiffs since "it is simply not responsible for a product that it did not create." We, of course, review the grant of summary judgment *de novo*.

## II.

■■■■ Whether DuPont owed a duty to the plaintiffs is a question of law. *Kirk v. Michael Reese Hospital and Medical Ctr.*, 117 Ill.2d 507, 111 Ill.Dec. 944, 953, 513 N.E.2d 387, 396 (1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). Illinois follows the *Restatement (2d) of Torts* § 402A (1965), and imposes strict liability on sellers of unreasonably dangerous products where the dangerous condition existed when it left the manufacturer's control. *Lamkin v. Towner*, 138 Ill.2d 510, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990); *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), *overruled on other grounds*, *Dixon v. Chicago*, 151 Ill.2d 108, 176 Ill.Dec. 6, 13, 601 N.E.2d 704, 711 (1992). A product may be considered "unreasonably dangerous" due to either a design or manufacturing defect, or the manufacturer's failure to warn of a nonobvious risk. *Lamkin*, 150 Ill.Dec. at 570, 563 N.E.2d at 457. The plaintiffs allege that DuPont's Teflon was unreasonably dangerous under both theories, and that DuPont should have refused to sell Teflon to Vitek.

### A.

■■■■ A design defect will render a product unreasonably dangerous when the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordi-nary knowledge common to the community as to its characteristics." *Lamkin*, 150 Ill. Dec. at 570, 563 N.E.2d at 457; *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401 (1969); *see also Todd v. Societe BIC*, 21 F.3d 1402 (7th Cir.1994) (en banc); *Todd v. Societe BIC*, 9 F.3d 1216 (7th Cir.1993) (en banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994) (extensive discussions of design defects under Illinois law). Strict liability may extend to manufacturers of component parts for injuries caused by design or manufacturing defects in the component part itself. *Suvada*, 210 N.E.2d at 188; *Thomas v. Kaiser Agric. Chemicals*, 81 Ill.2d 206, 40 Ill.Dec. 801, 407 N.E.2d 32 (1980). It will also extend to a manufacturer of an inherently dangerous raw material. *Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 73 Ill.Dec. 350, 355–56, 454 N.E.2d 210, 215–16 (1983) (raw asbestos inherently dangerous). The plaintiffs contend that Teflon was unreasonably dangerous when used in TMJ Implants, since the "ordinary" consumer would not expect Teflon to disintegrate and cause injury.

But the plaintiffs do not contend that Teflon is an inherently dangerous product with no safe applications. Clearly, Teflon is a raw material with many safe uses; it only became dangerous when Vitek incorporated it into a highly specialized medical device, the Proplast TMJ Implant.[1] The drafters of the Restatement took no position on whether § 402A applies in this context, but did offer some commentary:

If, for example, raw coffee beans are sold to a buyer who roasts and packs them for sale to the ultimate consumer, it cannot be supposed that the seller will be relieved of all liability when the raw beans are contaminated with arsenic, or some other poison.... On the other hand, the manufacturer of pigiron, which is capable of a wide variety of uses, is not so likely to be held

---

[1] There is a factual dispute about whether Teflon was changed significantly in the Proplast manufacturing process. If the Teflon underwent significant changes that were not foreseeable to DuPont, DuPont would not be held liable to the plaintiffs. *Thomas v. Kaiser*, 40 Ill.Dec. at 806, 407 N.E.2d at 37 (manufacturer of component part liable only when assembler makes no sub-stantial change in the part); *Woods v. Graham Engineering Corp.*, 183 Ill.App.3d 337, 132 Ill. Dec. 6, 539 N.E.2d 316, 318–19 (1989). We do not need to consider whether the Teflon was significantly altered, since we find that DuPont had no duty to the plaintiffs even if the Teflon remained the same.

to strict liability when it turns out to be unsuitable for the child's tricycle into which it is finally made by a remote buyer. The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes.

*Restatement (2d),* § 402A, comment p.

Illinois courts have largely followed the logic of the Restatement. While manufacturers of inherently dangerous raw materials will be held liable for injury caused by their product, *Hammond,* 73 Ill.Dec. at 355–56, 454 N.E.2d at 215–16, courts have treated differently manufacturers of inherently *safe* components when the final assembly, rather than a manufacturing or design defect in the component itself, renders the component dangerous. "[S]uch a manufacturer will not be held liable if the injury resulted from a dangerous condition created by the party who created the final product. 'The obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not ... extend to the anticipation of how manufactured components not in and of themselves dangerous or defective can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another.'" *Woods v. Graham Engineering Corp.,* 183 Ill.App.3d 337, 132 Ill.Dec. 6, 9, 539 N.E.2d 316, 319 (1989) (quoting *Curry v. Louis Allis Co.,* 100 Ill.App.3d 910, 56 Ill. Dec. 174, 427 N.E.2d 254 (1981)); *Loos v. American Energy Savers, Inc.,* 168 Ill. App.3d 558, 119 Ill.Dec. 179, 183, 522 N.E.2d 841, 845 (1988) ("A component part manufacturer is not obligated to anticipate how a nondangerous part may become unreasonably dangerous as used in the final assembly."). *See also Kokoyachuk v. Aeroquip Corp.,* 172 Ill.App.3d 432, 122 Ill.Dec. 348, 351, 526 N.E.2d 607, 610 (1988).

The rule is particularly applicable when an inherently safe raw material is used in the manufacture of a highly specialized finished product. Illinois adopted the doctrine of strict products liability to ensure that the loss caused by unsafe products is borne by those who created the harm, who derive eco-nomic benefits from them, and, importantly, "who are in a position to eliminate the unsafe character of the product and prevent the loss." *Hebel v. Sherman Equip.,* 92 Ill.2d 368, 65 Ill.Dec. 888, 894, 442 N.E.2d 199, 205 (1982). A rule placing liability for a defective product on the manufacturer of a specialized end-product, rather than the supplier of safe raw materials follows from these policies. The manufacturer of a finished product knows the precise use it intends to make of the raw material or component part, and is in a far better position than the manufacturer of raw materials to determine whether it is safe for that purpose.

We believe that, in this case, the Illinois courts would not place that burden on Du-Pont. Teflon was a safe, raw material. Du-Pont informed Vitek that Teflon was not manufactured and had not been tested for use in medical devices. Although the plaintiffs allege that DuPont was intimately aware of Vitek's plans for developing and marketing a Proplast TMJ Implant, they have not alleged that DuPont had any control over the design or composition of the Proplast TMJ Implants, or that there was a manufacturing defect in the Teflon. "[T]here is a marked difference between knowing the identity of the equipment into which a component part will be integrated and anticipating any hazardous operation by that equipment that might be facilitated by the addition of the component part." *Childress v. Gresen Mfg. Co.,* 888 F.2d 45, 49 (6th Cir.1989). Clearly Vitek—an FDA-regulated manufacturer of medical devices—was in a better position than DuPont to determine whether an inert raw material could be safely implanted in the human body, it seems clear that Illinois would not hold DuPont liable for the eventual failure of Teflon in the Proplast TMJ Implant. *Cf. Rynders v. E.I. Du Pont and De Nemours & Co.,* 21 F.3d 835, 842 (8th Cir. 1994) (no liability applying § 402A).

### B.

 A product that is not inherently dangerous may be considered defective if the manufacturer fails to warn of its non-obvious dangers. A manufacturer need warn only of dangers of which it knows or should know.

*Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980). The plaintiffs alleged that DuPont breached its duty by failing to warn Vitek, physicians and the plaintiffs that Teflon was unsuitable for use in the Proplast TMJ Implant. Clearly, DuPont told Vitek everything that it knew: in addition to the warnings that DuPont had not tested Teflon for medical use, DuPont pointed Vitek to the studies showing that Teflon had failed when used in hip implants. The plaintiffs rely in great part on their expert's affidavit stating (unsurprisingly) that the hip and jaw implants could be expected to perform similarly, and thus DuPont should have discerned from the studies on hip implants that Teflon was unsuitable for TMJ Implants.

We find that DuPont's warnings to Vitek were sufficient as a matter of law. DuPont warned Vitek of everything that it knew; the plaintiffs have put forth no evidence from which a jury could find that DuPont should have known anything more. Indeed, when DuPont told Vitek about the studies on hip implants, Dr. Homsy replied that he was familiar with those studies, had been in contact with their author, but believed for numerous reasons that a Proplast TMJ Implant would function better than the pure Teflon hip implant. Moreover, a duty to warn arises only when there is unequal knowledge with respect to the risk of harm, *Smith v. American Motors Sales Corp.*, 215 Ill.App.3d 951, 159 Ill.Dec. 477, 482, 576 N.E.2d 146, 151 (1991); *Collins v. Hyster Co.*, 174 Ill. App.3d 972, 124 Ill.Dec. 483, 487, 529 N.E.2d 303, 307 (1988); and while DuPont had superior knowledge of any of Teflon's hidden dangers, Vitek clearly had superior knowledge of its suitability for use in joint implants.

DuPont's duty to warn did not, however, require it to warn physicians and the plaintiffs. Were Teflon an inherently dangerous raw material, DuPont would have a duty to warn the plaintiffs, as well as Vitek, of its hazards. *Hammond*, 73 Ill.Dec. at 355–56,

454 N.E.2d at 215–16. But, as a supplier of raw materials, DuPont cannot warn plaintiffs of dangers created by the faulty design of a finished product manufacturer. "The alleged foreseeability of the risk of the finished product is irrelevant to determining the liability of the component part manufacturer because imposing such a duty forces the supplier to retain an expert in every finished product manufacturer's line of business." *Kealoha v. E.I. Du Pont de Nemours & Co.*, 844 F.Supp. 590, 594 (D.Haw.1994). Federal law generally places the burden of gaining FDA approval for medical devices and warning labels on the manufacturer of the medical device, not the manufacturer of the component parts. 21 C.F.R. §§ 807.20(a), 807.65, 807.81(a); *Rynders*, 21 F.3d at 842.[2] We believe that after DuPont has warned Vitek of any dangers, and so long as there are no inherent dangers, Illinois would shift the burden of subsequent warnings to Vitek.

### C.

The plaintiffs also brought causes of action in negligence, alleging that DuPont was negligent in selling Teflon to Vitek, and negligent in failing to warn Vitek and the plaintiffs of Teflon's unsuitability. But the elements of negligence and of strict liability do not differ in any sense relevant here. For the same reasons that DuPont is not strictly liable for the plaintiff's injuries, it was not negligent in either selling the product or failing to warn the plaintiffs of the risk of failure in a Proplast TMJ Implant.

The district court's grant of summary judgment is therefore AFFIRMED.

---

**2.** DuPont argues in support of its judgment below that the Medical Device Amendments of 1976, 21 U.S.C. § 360 *et seq.*, preempt state actions against manufacturers of bulk medical supplies. 21 U.S.C. § 360k(a). *See LaMontagne*

*v. E.I. Du Pont de Nemours & Co.*, 834 F.Supp. 576, 580–86 (D.Conn.1993) (thorough discussion of preemption claim). We do not need to reach that issue here since we affirm on other grounds.