Elysa **KEALOHA,** Individually and as Next Friend to Gabe Kealoha; Esther Cabalse; Moses Cabalse; Jonnie Cook; David Frederickson; Barbara Hook; Raymond Hook; and Jack Hook, Plaintiffs–Appellants,

v.

**E.I. DU PONT DE NEMOURS AND COMPANY, INC.;** Dow Corning Corporation, Defendants–Appellees.

Cynthia **WOLFE,** Individually and as Next Friend to Sarah Straub, Individually and as Next Friend to Matthew Wolfe; Kent Wolfe, Plaintiffs–Appellants,

v.

**VITEK, INC.,** Defendant,

**E.I. du Pont de Nemours and Company, Inc.,** Defendant–Appellee.

Nos. 94–15688, 94–16405.

United States Court of Appeals, Ninth Circuit

Argued and Submitted Nov. 6, 1995.

Decided May 3, 1996.

Alan R. Brayton, Brayton, Gisvold & Harley, Novato, California, for the plaintiffs-appellants.

Edward M. Mansfield, Lewis and Roca, Phoenix, Arizona, for the defendants-appellees.

Before: HUG, Chief Judge; THOMPSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether, under Hawaii law, a manufacturer has a duty to warn of danger posed by a material that is later used in a medical implant device.

## I

Elysa Kealoha and the eight other appellants (collectively "Kealoha") appeal the district court's grant of summary judgment in favor of E.I. du Pont de Nemours & Company ("DuPont") in this products liability action arising under diversity jurisdiction. Kealoha sued DuPont as the manufacturer of a raw material (Teflon)[1] used by Vitek, Inc. to produce Proplast,[2] which Vitek in turn used to create jaw implants.

Between 1983 and 1987, oral surgeons used a medical device known as the Vitek Proplast Interpositional TMJ Implant (the "implant") to correct problems in each appellant's temporomandibular joint ("TMJ"). The implant recipients suffered debilitating tissue reactions when the implants fragmented.

The implants were made by Vitek, which also manufactured the Proplast used to produce the implants. Vitek combined polytetrafluoroethylene ("PTFE"; also known as "Teflon"), purchased from DuPont, with other material, such as carbon fibers, to make Proplast. In addition, Vitek used fluorinated ethylene propylene ("FEP") film, which DuPont manufactured and sold under the Teflon trademark to intermediaries who, in turn, sold the material to Vitek. PTFE and FEP are chemically inert materials with numerous industrial applications. Kealoha sued DuPont, alleging that DuPont had a duty to warn them of the danger of deteriorating PTFE in the implants.

The implant was designed and manufactured by Dr. Charles Homsy, who founded the now-bankrupt Vitek in 1969. Homsy worked for DuPont from 1959 to 1966, but he did not work on the medical applications of any DuPont products while he was a DuPont employee. He left DuPont to develop human implants made from Teflon and eventually patented an implant material called Proplast, which was made of a processed form of PTFE. The process of turning PTFE into Proplast included mixing PTFE with carbon fibers and other material; filtering, compressing, and rolling the mixture into a cake; and heating, drying, leaching and redrying

the cake. After this process, PTFE constituted approximately ninety percent of Proplast. Vitek fused the FEP film to the Proplast after sanding, heating, and compressing the film.

Vitek purchased the PTFE from DuPont. Because Vitek planned to use PTFE for medical purposes, DuPont required Homsy to sign a letter stating that Vitek assumed full responsibility for any consequences resulting from its use of PTFE. In the letter, DuPont informed Vitek that DuPont had not conducted tests on Teflon's suitability for medical uses and that some studies had concluded that PTFE implants deteriorated dangerously. DuPont referred Vitek to two studies from the 1960s-conducted by Dr. John Charnley and Dr. John Leidholt, respectively-which indicated that pure PTFE was not an acceptable material for hip implants in dogs. Dr. Charnley observed that pure PTFE deteriorated rapidly in the implants. Dr. Leidholt noted that PTFE flaked into particles causing inflammation in the dogs' hips. Homsy signed the waiver and acknowledged the existence of these studies.

In 1983, the FDA granted Vitek permission to market the Proplast TMJ Implant. In making this decision, the FDA considered the studies from the 1960s involving pure PTFE in dog hip implants as well as more recent studies supporting the use of Proplast (of which PTFE was an ingredient) in human implants. Finally, in March 1983, Vitek introduced the implants made of Proplast.

In 1984, a DuPont researcher attended an oral surgeons' conference and completed a memo on the lectures and papers delivered. He noted that at least two speakers warned that Proplast implants, though not the Vitek Proplast TMJ Implant in particular, were problematic because they fragmented and deteriorated.

In January 1991, the FDA removed Proplast implants from the market because of concern over damage attributed to the im-

---

1. Teflon[R] is a registered trademark of DuPont.

2. Proplast[R] is a registered trademark of Vitek.

plants. Hundreds of suits have been filed in both state and federal courts.[3]

Kealoha alleged causes of action based on negligence, strict liability, breach of warranty, and misrepresentation. DuPont moved for summary judgment on all counts on the issue of duty, claiming that as a raw material supplier, DuPont owed no duty to Kealoha who was an ultimate consumer of another company's medical device. DuPont contended that it (1) owed no duty, under strict product liability, to assure the safety of Vitek's specialized use of its raw material; and (2) owed no duty because it sold the PTFE to a sophisticated purchaser.

Kealoha argued that DuPont did owe a duty to warn because (1) as a raw material supplier, DuPont was required to warn Vitek and the ultimate consumer of the dangerous applications of its product; (2) Vitek was not a sophisticated purchaser; and (3) DuPont is strictly liable as a trademark licensor of Teflon.

DuPont moved for summary judgment, which was granted. The district court denied Kealoha's motion for reconsideration, and Kealoha timely filed a notice of appeal.[4]

## II

As a threshold matter, we address DuPont's argument that Kealoha's state-law claims are preempted by federal law.

DuPont argues that since the Medical Device Amendments of 1976 ("MDA"), amending 21 U.S.C. §§ 301–392, and their implementing regulations preempt state statutes and common law regulating medical devices, Kealoha's state-law claims for negligence and strict liability are preempted.[5] This argument is without merit.

■ Three months after the parties filed their briefs, this court expressly held that the MDA Amendments do not preempt a state law action against DuPont for the manufacture of PTFE. *Anguiano v. DuPont*, 44 F.3d 806, 809–10 (9th Cir.1995); *accord LaMontagne v. DuPont*, 41 F.3d 846, 853–55 (2d Cir.1994).

As this court concluded in *Anguiano*:

There is no federal preemption here because the FDA has issued only identification and classification regulations relating to PTFE vitreous carbon material, 21 C.F.R. § 872.3680, mandibular implant facial prosthesis, 21 C.F.R. § 874.3695, and PTFE with carbon fibers composite implant material, 21 C.F.R. § 878.3500. As identification provisions, these regulations do not "relate to the safety or effectiveness of the device," 21 U.S.C. § 360k(a), and so are not specific requirements which preempt state law. "An 'identification provision' in the federal regulations does not act as a specific requirement which would preempt state common law."

**3.** More than twenty federal courts have granted summary judgment to DuPont on virtually identical claims involving plaintiffs, in states beyond Hawaii, who received the Vitek implants. *See, e.g., Jacobs v. DuPont*, 67 F.3d 1219 (6th Cir. 1995) (applying Ohio law); *Anguiano v. DuPont*, 44 F.3d 806 (9th Cir.1995) (applying Arizona law); *Apperson v. DuPont*, 41 F.3d 1103 (7th Cir.1994) (applying Illinois law); *LaMontagne v. DuPont*, 41 F.3d 846 (2d Cir.1994) (applying Connecticut law); *Klem v. DuPont*, 19 F.3d 997 (5th Cir.1994) (applying Louisiana law); *In re TMJ Implants Prods. Liab. Litig.*, 872 F.Supp. 1019 (D.Minn.1995) (consolidating more than 200 cases involving law of many states including Hawaii).

**4.** By an order filed December 2, 1994, the Ninth Circuit Appellate Commissioner consolidated the *Kealoha* appeal with an appeal from the district court's grant of summary judgment for DuPont in *Wolfe v. Vitek*, No. 93–00072, slip op. (D.Haw. July 18, 1994).

**5.** Section 360k(a) of the MDA provides:

[No] State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement -

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C.A. § 360k(a) (West Supp.1994). Pursuant to its power to promulgate regulations under 21 U.S.C.A. § 371(a) (West 1972), the Food and Drug Administration ("FDA") established that the MDA preempts any state law "which is different from, or in addition to, any requirement applicable to such device under any provision of the act." 21 C.F.R. § 808.1(b).

44 F.3d at 809–10 (footnote and citations omitted); *see also id.* at 810 (citations omitted) (as a Class II device, PTFE vitreous carbon material "must carry some specific regulation beyond the identification regulation for preemption to apply").

Accordingly, the MDA Amendments do not preempt Hawaii law regulating the manufacture, sale, and use of PTFE.

## III

Kealoha contends that the district court erred in granting summary judgment for DuPont because there is a genuine issue of material fact as to whether DuPont had a duty to warn Kealoha of dangers posed by the use of Teflon in Vitek's production of the implant devices.

 Whether DuPont owed a duty to warn Kealoha is a question of law. *Cuba v. Fernandez,* 71 Haw. 627, 801 P.2d 1208, 1211 (1990). Under Hawaii strict product liability law, a defendant is only liable if a plaintiff can show "that the seller is engaged in the business of selling the product, that the product contains a defect dangerous to the user or consumer, and that the defect is the cause of the injury." *Johnson v. Raybestos–Manhattan, Inc.,* 69 Haw. 287, 740 P.2d 548, 549 (1987) (on certified question from the Ninth Circuit) (citing *Ontai v. Straub Clinic and Hosp.,* 66 Haw. 237, 659 P.2d 734, 739 (1983)); *see In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806, 815 (9th Cir.1992). "A product is dangerously defective if it does not meet the reasonable expectations of the ordinary consumer or user as to its safety." *Johnson,* 740 P.2d at 549 (citing *Ontai,* 659 P.2d at 739). In a strict product liability case for injuries caused by an inherently unsafe product, "the issue of whether the seller knew or reasonably should have known of the dangers inherent in his or her product is irrelevant to the issue of liability." *Id.*

Since "it is undisputed that Teflon is safe for multiple industrial uses and there is no evidence that Teflon is an inherently dangerous or unsafe raw material," the district court held that "DuPont cannot be held liable for the use of its safe raw material in a defective end product." *Kealoha v. DuPont,* 844 F.Supp. 590, 595 (D.Haw.1994).[6]

Having determined that DuPont's Teflon itself was not inherently dangerous, the court then considered whether DuPont could nonetheless be held liable as the supplier of a raw material used by another company to produce a defective product. Although the district court acknowledged Hawaii's "tradition of expansive construction of strict product liability claims," *see id.* at 594 (citing *In re Hawaii Fed. Asbestos Cases,* 699 F.Supp. 233, 237 (D.Haw.1988), *aff'd,* 960 F.2d 806 (9th Cir.1992)), the district court correctly observed that no Hawaii court has held "a bulk distributor of an inherently safe component part liable when that part is used in a defective end product." *Kealoha,* 844 F.Supp. at 594.

Since this question raises an issue of first impression in Hawaii, the district court properly looked to other jurisdictions to predict how the Hawaii Supreme Court would decide the issue. *Id.* at 594 & n. 9 (citing *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980)). Noting that the distinction between strict liability and negligence lessens in duty to warn cases, the court concluded that "under either theory, the issue is whether a warning was required and, if so, if an adequate warning was provided." *Id.* (citations omitted); *accord Anguiano v. DuPont,* 44 F.3d 806, 811–12 (9th Cir.1995).

Applying the raw material supplier defense, which has been recognized by a number of courts in product liability cases, the district court held: "A manufacturer of a nondefective component part has no duty to analyze the design and assembly of the completed product of an unrelated manufacturer to determine if the component is made dangerous by the integration into the finished product." *Kealoha,* 844 F.Supp. at 594 (citations omitted); *see In re TMJ Implants*

---

6. The record supports the district court's conclusion that Teflon is not dangerously defective. We note that other courts of appeals have affirmed the conclusion that Teflon is not inherently dangerous. *See, e.g., Jacobs v. DuPont,* 67 F.3d 1219, 1241 (6th Cir.1995); *Apperson v. DuPont,* 41 F.3d 1103, 1106–08 (7th Cir.1994); *Klem v. DuPont,* 19 F.3d 997, 1003 (5th Cir.1994).

*Prods. Liab. Litig.*, 872 F.Supp. 1019, 1025–28 (D.Minn.1995) (discussing jurisdictions including California and Pennsylvania that have applied raw material supplier defense in similar situations). The district court concluded that

> [t]he alleged foreseeability of the risk of the finished product is irrelevant to determining the liability of the component part manufacturer because imposing such a duty would force the supplier to retain an expert in every finished product manufacturer's line of business and second-guess the finished product manufacturer whenever any of its employees received any information about any potential problems.

*Kealoha*, 844 F.Supp. at 594 (citing *Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir.1989)), *quoted in Apperson v. DuPont*, 41 F.3d 1103, 1108 (7th Cir.1994) (quoting this passage from *Kealoha* in support of conclusion that "as a supplier of raw materials, DuPont cannot warn plaintiffs of dangers created by the faulty design of a finished product manufacturer").

In reaching this conclusion, the court rejected Kealoha's claim that a longstanding " 'incestuous, mutually beneficial relationship' " existed between Homsy and DuPont such that DuPont should be held responsible for Homsy's implants. *Kealoha*, 844 F.Supp. at 595 (citation omitted). As the district court correctly observed, the record does not support Kealoha's claim of a special relationship. *Id.*

The district court concluded that "[s]ince PTFE is not inherently dangerous and since there was no special relationship between DuPont and Vitek, there is no legal basis for requiring DuPont to warn the ultimate consumers of the Implant." *Id.*

By endorsing the raw material supplier defense, the district court placed Hawaii law in line with the law of a growing number of states.[7] In *Childress v. Gresen Manufacturing Co.*, 888 F.2d 45 (6th Cir.1989) (applying Michigan law), the district court had determined that, where a component part became

"potentially dangerous in its ultimate use," the mere fact that the manufacturer of the component part had knowledge of the design of the final product was not a sufficient reason to assign responsibility to the manufacturer of the component part. *Id.* at 49; *see* Restatement (Second) of Torts § 402A cmt. p (1965) ("[T]he manufacturer of pigiron, which is capable of a wide variety of uses, is not so likely to be held to strict liability when it turns out to be unsuitable for the child's tricycle into which it is finally made by a remote buyer."); *Crossfield v. Quality Control Equip. Co.*, 1 F.3d 701, 703–04 (8th Cir. 1993) (finding no liability under Missouri law on part of supplier of non-defective chain used by manufacturer as component of machine that malfunctioned); *see, e.g., Lee v. Butcher Boy*, 169 Cal.App.3d 375, 215 Cal. Rptr. 195 (1985) (applying raw material supplier rule).

On appeal, Kealoha argues that the district court erred in exonerating DuPont by recognizing the raw material supplier defense. Kealoha contends that Hawaii negligence law can be invoked to hold DuPont liable for its failure to warn Kealoha of the dangers associated with Vitek's use of Teflon in the implants. Citing *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), Kealoha maintains that a defendant's liability for failure to warn arises when "[1] the uses to which the appellants' [product] were put were reasonably foreseeable, [2] such uses involved 'a substantial danger that would not be readily recognized by the ordinary user of the product,' and [3] the appellants had 'failed to give adequate warnings of such danger.' " *Id.* at 813 (quoting jury instructions).

Kealoha argues that DuPont is liable to Kealoha under Hawaii products liability law because (1) the foreseeability of, and DuPont's actual knowledge of, Vitek's use of DuPont's Teflon in a load-bearing implant gave rise to DuPont's duty to warn Kealoha; and (2) DuPont's disclaimers were not ade-

---

7. *See generally In re Silicone Gel Breast Implants*, 887 F.Supp. 1463, 1467 (N.D.Ala.1995) (noting that California, Connecticut, Hawaii, Michigan, Minnesota, Missouri, New Jersey, North Car- olina, North Dakota, Oklahoma, Pennsylvania, and Utah have recognized raw material supplier defense).

quate warnings. This argument is without merit.

■ By properly applying the raw material supplier doctrine as a defense to Kealoha's negligence and strict liability claims, the district court correctly concluded that "the alleged foreseeability of the risk of the finished product is irrelevant to determining the liability of [DuPont]." *Kealoha*, 844 F.Supp. at 594; *accord Childress*, 888 F.2d at 49; *In re TMJ Implants*, 872 F.Supp. at 1028. Since the district court's application of the raw material supplier defense is reasonable and supported by the record, we hold that the district court did not err in declining to consider the issue of foreseeability. Accordingly, Kealoha has failed to raise a genuine issue of material fact as to whether DuPont had a duty to warn.

## IV

After granting summary judgment for DuPont under the court's interpretation of Hawaii strict product liability law, the district court in *Kealoha* declined to consider additional arguments, including DuPont's claim that the bulk supplier/sophisticated purchaser rule relieved DuPont of any liability. *Kealoha*, 844 F.Supp. at 595. However, the district court in the consolidated case of *Wolfe v. DuPont* did consider this argument, and concluded that, in this matter of first impression, the Hawaii Supreme Court would apply the doctrine as an alternate basis for the grant of summary judgment in favor of DuPont. *Wolfe*, slip op. at 11–12.

■ Under the bulk supplier doctrine, " '[b]ulk suppliers of products to manufacturers, who are sophisticated users, have no duty in negligence, strict liability, or breach of warranty to warn ultimate purchasers of the manufacturer's product.' " *In re TMJ*

*Implants*, 872 F.Supp. at 1029 (quoting American Law of Products Liability 3d § 5.23 (Matthew J. Canavan, ed.1994)).

■ Kealoha argues that DuPont as a bulk supplier had a duty to warn end users such as Kealoha where the end users were foreseeably endangered by the raw material in the final product. DuPont contends that it sold raw materials in bulk to a sophisticated finished product manufacturer, Vitek, that was (1) aware of the alleged risks of using the raw materials in the human body, (2) under an independent duty to warn, and (3) in a better position to warn.[8]

■ Section 388 of the Restatement (Second) of Torts sets forth the basis for the bulk supplier/sophisticated purchaser rule:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965).[9] When a manufacturer provides a product to an intermediary who will then sell the product to the ultimate user, the Restatement indicates that the following factors should be considered in determining whether a warning

---

8. Vitek qualifies as a sophisticated purchaser because it is undisputed that Dr. Homsy, Vitek's founder and president, received a doctorate in chemical engineering from M.I.T. and served as the Director of the Prosthesis Research Laboratory at the Methodist Hospital in Houston, where he patented the biomaterial Proplast. He has served on the faculty of the Baylor College of Medicine and he has published more than fifty articles on artificial implants.

9. It should be noted that DuPont contends that § 388 does not apply to claims brought by finished product users against suppliers of raw materials. *See Veil v. Vitek, Inc.*, 803 F.Supp. 229, 233 (D.N.D.1992) (bulk seller of raw materials (DuPont) not a supplier of chattels within meaning of § 388 of Restatement). However, DuPont argues that even if § 388 is applied, under the bulk supplier doctrine DuPont would be entitled to summary judgment.

to an intermediary from the manufacturer is sufficient:

> (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that he directly warn all users.

*Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739–40 (3d Cir.1990) (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). *See generally* Restatement (Second) of Torts § 388 cmt. n (1965).

■■■ After considering these factors, the *Wolfe* court concluded that DuPont was entitled to summary judgment as a matter of law on Kealoha's duty to warn claim. The court emphasized that (1) Homsy and Vitek "had far greater knowledge, expertise and experience with the use of the implant than DuPont"; (2) Vitek was legally obligated to comply with FDA statutes and regulations warning users of the dangers associated with the implants (21 U.S.C.A. §§ 333, 352(f) (West 1972 & Supp.1995)); and (3) DuPont advised Homsy of the dangers of using Teflon in medical applications and Homsy not only signed DuPont's waiver acknowledging the warning, but also wrote to DuPont indicating that "he was intimately familiar with the medical literature on the use of PTFE in implants." *Wolfe*, slip op. at 12.

The *Wolfe* court's conclusions are supported by the record and by decisions of other courts that have applied the bulk supplier doctrine to cases brought against DuPont by recipients of the implants. *See In re TMJ Implants*, 872 F.Supp. at 1033 (concluding that DuPont would be entitled to summary judgment under the bulk supplier doctrine in at least Alabama, Florida, Georgia, Illinois, Kansas, Louisiana, Ohio, Oregon, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, and Wisconsin).

On appeal, Kealoha argues that the bulk supplier doctrine cannot insulate DuPont from liability because Hawaii would not recognize the doctrine. For support, Kealoha asserts the existence of a trend in the modern tort law of California toward the "determination of liability purely according to fault." Kealoha maintains that "[a]rtificial distinctions among the parties are no longer permitted to exonerate a defendant from liability where the defendant's lack of due care was a proximate cause of the plaintiff's injury." However, Kealoha fails to cite a single case in which California expressly renounces the bulk supplier doctrine.

In fact, in *Walker v. Stauffer Chemical Corporation*, 19 Cal.App.3d 669, 96 Cal.Rptr. 803 (1971), the California Court of Appeal held that a bulk supplier of acid was not liable for the finished product packaged by another company. *Id.* 96 Cal.Rptr. at 806. Moreover, Hawaii has looked to Pennsylvania for guidance on failure to warn cases, *see Johnson v. Raybestos–Manhattan, Inc.*, 69 Haw. 287, 740 P.2d 548, 549 (1987), and the bulk supplier doctrine has been applied under Pennsylvania law. *Kalinowski v. Du-Pont*, 851 F.Supp. 149, 153–59 (E.D.Pa.1994) (applying bulk supplier rule under Pennsylvania law), *mot. to vacate denied*, No. CIV. A. 92–2511, 1994 WL 230832 (E.D.Pa. May 23, 1994).

Therefore, it was not unreasonable for the district court to conclude that the Hawaii Supreme Court would apply the bulk supplier doctrine in favor of DuPont.

## V

Kealoha argues that DuPont is liable for defects in the implants because DuPont permitted Vitek to use DuPont's trademark Teflon in marketing the implants. According to Kealoha, Vitek's use of DuPont's trademark was not " 'fair use' of mere 'descriptive information' " because such use created a likelihood of confusion as to the identity of the manufacturer of the implant. *Kealoha*, 844 F.Supp. at 596. In rejecting this argument, the district court noted that "(1) plaintiffs' [sic] have presented no evidence that Vitek improperly used DuPont's trademark; and (2) no case has ever held a trademark owner liable in tort for damages resulting from a defective product simply because the trademark owner did not properly police his trademark." *Id.* at 595; *accord In re TMJ Im-*

*plants,* 872 F.Supp. at 1034 ("The Court knows of no case in which a party was held liable for defective products manufactured by another company merely because the other company misused a trademark belonging to the first party. To hold DuPont liable under this theory would be to stretch trademark law far outside of its intended scope.").

 DuPont contends that Vitek was permitted to use DuPont's trademark to indicate that its products contained DuPont raw materials. *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); *see Forstmann Woolen Co. v. Murray Sices Corp.,* 144 F.Supp. 283, 290 (S.D.N.Y.1956) (Forstmann could not prevent Murray from using Forstmann trademark to indicate that Murray's finished clothing contained Forstmann fabric). The district court agreed with DuPont on this point, and correctly concluded that "no reasonable jury could hold that [confusion over the identity of the implant manufacturer] could take place as it was abundantly clear that Vitek and not DuPont was responsible for the manufacture and design of the Implant." *Kealoha,* 844 F.Supp. at 596.

Finally, the district court correctly concluded that "[e]ven if plaintiffs could show that Vitek improperly used DuPont's trademark, such improper use, standing alone, could not impose liability on DuPont for plaintiffs' injuries." *Id.* at 596. It is true that the Restatement (Second) of Torts states that a trademark holder can be held vicariously liable when he "puts out as his own product a chattel manufactured by another." Restatement (Second) of Torts § 400. However, courts have only imposed such liability when the trademark holder either voluntarily licensed its trademark or had significant involvement in the design, manufacture, or distribution of the other company's product. *Burkert v. Petrol Plus of Naugatuck,* 216 Conn. 65, 579 A.2d 26, 35 (1990); *Hebel v. Sherman Equip.,* 92 Ill.2d 368, 65 Ill.Dec. 888, 442 N.E.2d 199 (1982); *see Carter v. Joseph Bancroft & Sons Co.,* 360 F.Supp. 1103 (E.D.Pa.1973) (defendant licensed manufacture of dresses according to certain specifications); *Brandimarti v. Caterpillar Tractor Co.,* 364 Pa.Super. 26, 527 A.2d 134 (1987) (defendant licensed its trade name to wholly-owned subsidiary), *appeal denied,* 517 Pa. 629, 539 A.2d 810 (1988).

Since Kealoha can offer no evidence that DuPont voluntarily licensed its trademark to Vitek or that DuPont had significant involvement in the design, manufacture, or distribution of Vitek's implant, the district court did not err in rejecting Kealoha's trademark claim.

## VI

For the foregoing reasons, we affirm the district court's grants of summary judgment in both cases in favor of DuPont.

AFFIRMED.